IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARIA ISOLINA MARTINEZ,

      Plaintiff,

v.

CHECKR, INC.,

      Defendant.

CIVIL ACTION FILE NO.:

1:19-cv-4369-WMR-JKL

## FINAL REPORT AND RECOMMENDATION

This is a case arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA"). The case is before the Court on Defendant Checkr, Inc.'s Motion to Compel Arbitration [Doc. 6]. For the reasons that follow, it is **RECOMMENDED** that the motion be **GRANTED** and this case be **DISMISSED**.

## I.    Background

### A.    Allegations in Plaintiff's Complaint

In 2016, Plaintiff Maria Isolina Martinez began working as a driver for Uber, an on-demand transportation company. (Compl. [Doc. 1] ¶ 6.) In January 2019, Uber obtained a background screening report from Defendant that reflected,

inaccurately, that Plaintiff had committed aggravated assault in Texas. (*Id.* ¶¶ 7-11.)   According to Plaintiff, Defendant failed to take any steps to verify the accuracy of information contained in the report it furnished to Uber, and due to the inaccuracy of the report, Plaintiff was unable to work as an Uber driver and sustained reputational harm and emotional distress. (*Id.* ¶¶ 12-14, 23.)  Based on these facts, Plaintiff asserts that Defendant violated sections 1681e(b), 1681k(a), and 1681i(a) of the FCRA by (1) "failing to follow reasonable procedures to assure maximum accuracy of the information contained in its report and by failing to verify the accuracy of the information contained in its report"; (2) "failing to notify Plaintiff at the time it submitted its report to Uber that the report contained public record information indicating that Plaintiff committed Aggravated Assault, or alternatively, by failing to maintain strict procedures designed to ensure that said information was complete and up to date"; and (3) "failing to conduct a reasonable investigation after Plaintiff submitted her dispute, including by failing to use any additional identifiers to confirm whether the Aggravated Assault charge was properly matched to Plaintiff." (*Id.* ¶¶ 17-22.)

2

### B.    The Terms of Service and Arbitration Agreement

On October 9, 2019, Defendant moved to compel arbitration in lieu of filing an answer.  [Doc. 6.]  In support of its motion, Defendant submitted the Declaration of Preethi Bhansali, its Director of Operations [*see* Doc. 6-1], in which he states that on January 16, 2019, Plaintiff accessed Defendant's online Applicant Portal. (Bhansali Decl. ¶ 6.)  There, she was presented, electronically, with Defendant's Terms of Service, effective March 22, 2018 (the "TOS"), to which she had to agree to use the Applicant Portal.  (*Id.* ¶ 7; *id.* Ex. 2 (TOS).[1])  She clicked a box specifying that "By checking this box, I agree to Checkr's Terms of Service (set forth above . . . ."  (*Id.* ¶¶ 8-9, Ex. 1 (example of click-the-box screen).)

The TOS contains conspicuous language advising that it includes an arbitration agreement, stating on its initial page as follows:

> **IMPORTANT NOTICE: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS UNLESS YOU OPT OUT, AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW.  PLEASE READ CAREFULLY.**

---

[1] The TOS appears at pages 9-22 of Docket No. 6-1.  The TOS is not paginated, so for ease of reference, I refer to the page numbers automatically generated by the Court's electronic filing system when citing to specific portions of the document.

3

[Doc. 6-1 at 9.]  The first page of the TOS also contains the following statement,

in all capital letters:

> PLEASE NOTE: SECTION 14 OF THIS AGREEMENT GOVERNS HOW DISAGREEMENTS AND CLAIMS BETWEEN YOU AND CHECKR CAN BE RESOLVED. THIS SECTION, WITH LIMITED EXCEPTION, REQUIRES YOU AND CHECKR TO SUBMIT CLAIMS AGAINST EACH OTHER TO BINDING AND FINAL ARBITRATION.

[*Id.*]  The TOS also gives discretion to Defendant to modify or terminate the TOS:

> We reserve the right, in our sole discretion, to change and revise these Terms at any time by posting the changes on the [Defendant's website].  Any changes are effective immediately upon posting to the [Defendant's website].  The most current version will be available on our website, and the Effective Date of the current version is at the top of this page.  By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms, except as provided in the Arbitration and Class Action Waiver section below.  We may, with or without prior notice, terminate any of the rights granted by these Terms and Conditions.  We will provide you with any additional notices or choices with respect to such changes as required by applicable law.

[*Id.*]

The arbitration agreement itself is set forth in Section 14 of the TOS, entitled

"Arbitration and Class Action Waiver."  It provides in pertinent part as follows:

> **PLEASE READ THIS SECTION CAREFULLY - IT AFFECTS YOUR LEGAL RIGHTS AND GOVERNS HOW YOU AND CHECKR CAN BRING CLAIMS AGAINST EACH OTHER. THIS SECTION WILL, WITH LIMITED EXCEPTION, REQUIRE YOU AND CHECKR TO SUBMIT CLAIMS**

4

**AGAINST EACH OTHER TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS, GROUP OR REPRESENTATIVE ACTION IN COURT.**

### A. Agreement to Arbitrate

In exchange for the benefits of the speedy, economical, and impartial dispute resolution procedure of arbitration, You and Checkr mutually agree to give up our right to resolve disagreements in a court of law by a judge or jury, and, as described below, agree to binding and final arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

You and Checkr agree that this arbitration agreement is governed by the Federal Arbitration Act, and shall survive even after these Terms or any Services terminate.

### B. Claims Covered by Arbitration

Other than the exceptions in Section 14.D, You and Checkr agree that any disagreement, claim, or controversy arising out of or relating in any way to these Terms (including its enforcement, breach, performance, interpretation, validity, or termination), or Your access to and/or use of the Services, or the provision of content, services, and/or technology on or through the Services (hereinafter, "Claims"), shall be resolved by final and binding arbitration to the fullest extent allowed by law.

### C. Delegation to Arbitrator

If there is a disagreement about the arbitrability of any Claim (including questions about the scope, applicability, interpretation, validity, and enforceability of this arbitration agreement), You and Checkr agree that this threshold disagreement shall be delegated to the arbitrator (not a court) and that the arbitrator shall have initial authority to resolve such threshold disagreements.

5

**D. Claims Not Covered by Arbitration**

This arbitration agreement shall not require arbitration of the following types of claims: (1) small claims actions demanding $10,000 or less brought on an individual basis and within a small claims court's jurisdiction; and (2) applications for provisional remedies, preliminary injunctions, and temporary restraining orders, including those relating to actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights.

. . .

**F. Arbitration Rules, Procedures, and Costs**

You and Checkr agree that the arbitration shall be administered by the American Arbitration Association ("AAA") before a single arbitrator mutually agreed upon by the parties, and if the parties cannot agree within thirty (30) days after names of potential arbitrators have been proposed, then by a single arbitrator who is chosen by the AAA. The arbitrator will apply the terms of this arbitration agreement and the applicable AAA rules, which are available at www.adr.org or by calling 1-800-778-7879. If You are an individual person, the arbitrator shall apply the AAA Consumer Arbitration Rules. If You are not an individual person, but are an entity or company, the arbitrator shall apply the AAA Commercial Arbitration Rules.

*If You are an individual person and bring a claim solely for monetary relief of $10,000 or less*: Checkr will agree to pay for any filing, administrative, or hearing fees charged by the AAA. If the arbitrator finds that the substance of Your claim or the relief sought is frivolous or brought for an improper purpose, however, then the allocation of fees will be governed by the AAA Consumer Arbitration Rules.

*If You are an individual person and bring a claim for monetary relief exceeding $10,000*: The AAA Consumer Arbitration Rules will govern payment of administrative or hearing fees charged by the AAA, including limiting Your filing fee to $200. In addition, fee

6

waivers or other forms of cost relief at the arbitrator's discretion may be available.  If the arbitrator finds that the substance of Your claim or the relief sought is frivolous or brought for an improper purpose, however, then the allocation of fees will be governed by the AAA Consumer Arbitration Rules.

*If You are not an individual person*:   The AAA Commercial Arbitration Rules will govern payment of administrative or hearing fees charged by the AAA.

The arbitrator shall have the power to decide any motions, including dispositive or summary judgment motions, brought by any party to the arbitration.   The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court to resolve the party's individual claim, including awards of attorney's fees and costs, in accordance with the law or laws that apply to the Claim. The arbitrator shall provide in writing to the parties the basis for any award or decision.  Judgment upon any award rendered in such arbitration will be binding and may be entered in any court with proper jurisdiction.

. . . .

## H. Opt-out

If you are an individual person, You have the right to opt-out and not be bound by this arbitration agreement by sending written notice to Checkr-clearly indicating your intent to opt out of this arbitration agreement and including the name, phone number, and email address associated with Your account-via email (arbitration@checkr.com) or U.S. Mail (Checkr, Inc., Legal Department, 1 Montgomery Street, Suite 2000, San Francisco, CA 94104).  Your opt-out notice must be sent within 30 days of Your agreement to these Terms.

If You do not opt-out of this arbitration agreement within the 30-day period, You and Checkr shall be bound by the terms of this arbitration agreement in full.  If You opt-out of this arbitration agreement within

7

the 30-day period, it will not affect any other, previous, or future arbitration agreements that You may have with Checkr.

**I. Pre-Arbitration Notification and Negotiation Process**

Prior to initiating an arbitration, You and Checkr each agree to first attempt to negotiate an informal resolution of any Claims covered in Section 14.B. This pre-arbitration negotiation shall be initiated by providing written notice to the other party-including a brief written statement describing the name, address, and contact information of the notifying party, the facts giving rise to the Claim, and the relief requested. You must send such written notice to Checkr via email (legal@checkr.com) or U.S. Mail (Checkr, Inc., Legal Department, 1 Montgomery Street, Suite 2000, San Francisco, CA 94104); Checkr will send such written notice to the email address You have provided to Checkr.

During this pre-arbitration negotiation, all offers, promises, conduct and statements, whether oral or written, made in the course of the negotiation by any of the parties, their agents, employees, and attorneys are confidential, privileged and inadmissible for any purpose, including as evidence of liability, in arbitration or other proceeding involving the parties.

After a good faith effort to negotiate, if You or Checkr believe a Claim covered in Section 14.B cannot be resolved informally, the party intending to pursue arbitration agrees to notify the other party via email prior to initiating the arbitration. In order to initiate arbitration, a claim must be filed with the AAA and the written Demand for Arbitration (available at www.adr.org) must be provided to the other party, as specified in the AAA Rules.

[*Id.* at 17-20.]

Defendant has no record of receiving any written notice of opt-out from Plaintiff under § 14.H of the TOS. (Bhansali Decl ¶ 10.)

8

## II.   Discussion

### A.   The Parties' Arguments

Defendant argues that because the arbitration agreement delegates the threshold issue of whether Plaintiff's claims are arbitrable, the only issue before the Court is whether a valid arbitration agreement exists. [Doc. 6 at 9, 13-14.] If a valid agreement exists, Defendant maintains, the Court must compel Plaintiff to arbitrate her claims. [*Id.* at 13-14.] Alternatively, Defendant argues that even if the issue of arbitrability were for the Court to decide, Plaintiff should be compelled to arbitration because the claims fall within the scope of the arbitration agreement. [*Id.* at 14-16.] Finally, Defendant contends that if the Court compels Plaintiff to arbitrate her claims, the Court should dismiss, rather than stay, this case because "all issues will be decided during the arbitration." [*Id.* at 17.]

Plaintiff counters that Defendant's arbitration agreement is unenforceable because it is a contract of employment for transportation workers and, therefore, excluded from the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). [Doc. 9 at 1-4.] Alternatively, she argues that the arbitration agreement is illusory, and therefore unenforceable, because the TOS gives Defendant unfettered authority to

9

change the terms of the TOS, including the arbitration clause, without notice or consent from Plaintiff.  [*Id.* at 4-14.]

On reply, Defendant argues that the FAA's exception for employment contracts with transportation workers is inapplicable because Plaintiff did not have an employment contract with Defendant.  [Doc. 11 at 2-6.]  Defendant additionally argues that whether the arbitration agreement is illusory, and thus unenforceable, is a matter for the arbitrator to decide—not the Court. [*Id.* at 6-13.]  But even if this Court were to decide whether the arbitration agreement is illusory, Defendant maintains, the agreement is not illusory under Georgia law.  [*Id.* at 13.]

## B.    Applicable Federal Arbitration Law

The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citations omitted).  Section 2 of the FAA—the "primary substantive provision of the Act"—provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity to the revocation of any contract.

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and 9 U.S.C. § 2)). A party who is "aggrieved" by the failure of another party to abide by an arbitration agreement may move "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id*.  Upon finding that an issue is arbitrable, the Court shall ordinarily stay the district court proceedings pending the outcome of the arbitration  9 U.S.C. § 3.

Section 2 of the FAA reflects "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone*, 460 U.S. at 24.  Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language

11

itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25.

As relevant to this case, "the parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (quoting *Rent-A-Center*, 561 U.S. at 68-69). An agreement to arbitrate gateway issues—known as a "delegation provision"—"'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" *Id.* (quoting *Rent-A-Center*, 561 U.S. at 70). "Thus, '[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter.'" *Id.* (alteration in original) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, (1995)).

In contrast, the threshold issue of whether an agreement to arbitrate has been made is a matter for the Court to determine. *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). "The Supreme Court has made clear that this inquiry

is a matter of state contract law." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 (11th Cir. 2017). "If, under a summary judgment-like standard, the district court concludes that there is no genuine dispute as to any material fact concerning the formation of such an agreement, it may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch*, 861 F.3d at 1346 (alteration in original) (quotation omitted).  But if the court finds that there is a genuine issue of disputed fact over the making of the agreement, the court shall conduct a trial to establish the existence of an arbitration agreement. *Id.* "A dispute is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014)) (internal quotation marks omitted). Likewise, "conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment." *Id*. (quotation omitted). Also, in contrast to the strong presumption in favor of arbitration, no such presumption apply to disputes concerning whether an agreement to arbitrate has been made. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014).

13

### C.    Analysis

The Court begins its analysis with whether the parties have a binding and valid arbitration agreement.  As just noted, the issue of whether an arbitration agreement exists is an issue governed by state law, *see Bazemore*, 827 F.3d at 1329, and the parties appear to agree that Georgia law controls, [*see* Doc. 6 at 9-12 (arguing that TOS is valid under Georgia law); Doc. 9 at 5 (arguing that TOS is invalid under Georgia law).[2]]  The Eleventh Circuit summarized the Georgia law concerning the validity of a contract as follows:

> In Georgia, [t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.  The element of assent requires (a) a meeting of the minds (b) on the essential terms of the contract.  The existence and terms of a contract must be proven by a preponderance of the evidence.   The party asserting the existence of a contract has the burden of proving its existence and its terms.

*Bazemore*, 827 F.3d at 1330 (alteration in original) (citations and quotation marks omitted).

---

[2] The Court observes that the TOS contains a choice-of-law provision that provides that except for the arbitration provision, "which is governed by the Federal Arbitration Act," the TOS is governed by the laws of the State of California.  [Doc. 6-1 at 20.]  In the absence of any apparent dispute that Georgia law applies to the formation-of-contract issue, the Court will not belabor the issue and, following the parties' lead, applies Georgia law.

Here, there is no dispute that the parties are competent to enter into an arbitration agreement or that Plaintiff electronically signed the electronically signed the TOS—which contains the arbitration agreement, thus manifesting her intent to be bound by the TOS.  (Bhansali Decl. ¶ 9); [Doc. 6-1 at 22].  Defendant has also presented affidavit testimony indicating that Plaintiff did not communicate her intent to opt out of the arbitration agreement within the 30-day window allowed by Section 14.H of the TOS.  (Bhansali Decl. ¶ 10.)

Plaintiff does, however, challenge whether the arbitration agreement is supported by consideration.  She argues that Defendant has reseved the right to unilaterally change the terms of the TOS—including the arbitration clause—without Plaintiff's notice or consent, thus rendering the agreement is illusory due to want of mutuality.  [Doc. 9 at 6-7.]  I disagree.  For starters—looking solely at the arbitration agreement reflected in Section 14 of the TOS—the arbitration provision is supported by consideration because it requires both parties to resolve disputes through binding arbitration.  [Doc. 6-2 at 17.]  *See Jackson v. Cintas Corp.*, 425 F.3d 1313, 1318 (11th Cir. 2005) ("Under Georgia law, a mutual exchange of promises constitutes adequate consideration."); *see also Attenborough v. Dillard's Dep't Store*, No. 1:06-CV-0291-TWT, 2006 WL 1663299, at *2 (N.D. Ga. June 9,

2006) (holding that arbitration agreement was supported by consideration "as it required both the Plaintiff and the Defendant to submit all discrimination and retaliation disputes related to the Plaintiff's employment to 'final and binding arbitration'").

Plaintiff's contention that the promise to arbitrate is illusory is really a challenge against the TOS as a whole—not just the arbitration agreement. As a result, this issue concerns a gateway matter of arbitrability that is for the arbitrator to decide. As the Supreme Court has explained:

> There are two types of validity challenges under § 2 [of the FAA]: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."

*Rent-A-Center*, 561 U.S. at 70 (alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id*. In contrast, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate," since as "a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of

16

the contract." *Id.* at 70-71 (quotations omitted); *see also Buckeye*, 546 U.S. at 445-46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (holding that an arbitrator, not a court, is to decide issues challenging the enforceability of a contract as a whole).

Likewise, the Eleventh Circuit has explained that claims of lack of mutuality of obligation that "pertain to the contract as a whole, and not to the arbitration provision alone . . . should be resolved in arbitration." *Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986); *see also Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874, 877 (11th Cir. 2005) (relying on *Prima Paint* and *Benoay* to hold that arbitrator must resolve unconscionability challenge to arbitration agreement contained in loan agreement because the challenge related to loan agreements as a whole, rather than just the arbitration agreement).

Here, the reservation-of-rights provision that serves as the basis of Plaintiff's argument appears on the first page of the TOS, outside the arbitration provisions,

and applies generally to the agreement as a whole.[3]  What's more, it appears that the reservation-of-rights provision (while not the model of clarity) exempts unilateral modification of the arbitration agreement, stating in pertinent part that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms, ***except as provided in the Arbitration and Class Action Waiver section below***."  [Doc. 6-1 at 9 (emphasis added).]  Thus, Plaintiff's lack-of-mutuality argument challenges the enforceability of the TOS in its entirety—not just the arbitration provision.

In addition, as noted above, the arbitration agreement delegates the arbitrability of any claim—including questions about the validity and enforceability of the arbitration agreement—to the arbitrator.  The agreement thus provides "clear and unmistakable evidence" that the parties agreed to have an arbitrator decide gateway questions of arbitrability.  *See In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012).  As a result, Plaintiff's argument that the TOS and the arbitration lacks mutuality is for the arbitrator to decide.

_____

[3] Plaintiff acknowledges this in her brief, stating that "at any point and for any reason, Checkr can change the terms of its TOS, and specifically the terms of the arbitration clause, without notice to or consent from Plaintiff."  [Doc. 9 at 7.]

In this vein, I find the recent decision in *Michael Stephens v. Checkr, Inc.*, out of the Middle District of Florida highly persuasive.  *See* No. 8:19-cv-2252-T-36AAS (M.D. Fla. Nov. 25, 2019).[4]  In that case, after providing a thorough analysis, the court rejected an identical challenge to the same arbitration provisions at issue in this case, explaining:

> Because Plaintiff's claim that the arbitration provision is illusory is based on a separate provision of the contract, and not a provision that relates specifically or exclusively to the agreement to arbitrate, this is a challenge to the contract as a whole that must be resolved by the arbitrator in accordance with the Supreme Court's ruling in *Buckeye*.

*Id.*, slip op. at 9.  The court went on to distinguish many of the same cases that Plaintiff relies on here, explaining that "the overwhelming majority of the cases relied on by Plaintiff either do not address the Supreme Court's ruling in *Buckeye*, or its predecessor ruling in *Prima Paint*, or contain challenges to provisions directly affecting the arbitration agreement."  *Id.* at 9-12 (distinguishing *Hull v. Norcom, Inc.*, 750 F.2d 1547 (11th Cir. 1985); *Douglas v. Johnson Real Estate Inv'rs, LLC*, 470 F. App'x 823 (11th Cir. 2012); *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058 (D. Nev.2012); *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008); *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753

---

[4] A copy of this decision is located at Doc. 14-1.

19

(7th Cir. 2001); and *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000)).[5]  At least one other district court has followed the reasoning in *Stephens*, similarly holding that "Supreme Court precedent mandates" that a challenge to Defendant's arbitration agreement as illusory must be "decided by the arbitrator and not this Court."  *See Samantha Leigh Aldridge v. Checkr, Inc.*, No. SA-19-CA-1013-FB (W.D. Tex. Nov. 27, 2019), slip op. at 10.[6]

But even assuming, *arguendo*, that Plaintiff could be understood as challenging the arbitration provisions in particular, I am not persuaded that the reservation-of-rights provision renders the arbitration provision illusory.  Under Georgia law it is well-established that "the test of mutuality is to be applied as of the time the contract is to be enforced."  *Jones v. Quigley*, 169 Ga. App. 862, 863 (1984); *see also Rushing v. Gold Kist, Inc.*, 256 Ga. App. 115, 119 (2002).  In *Rushing*, for example, the Georgia Court of Appeals held that an arbitration clause that governed disputes between an agricultural cooperative and its members did not lack mutuality of obligation and consideration, even though the clause allowed the

---

[5] Of the remaining cases that Plaintiff cites, none is binding, and to the extent that they can be read as contrary to the holding in *Stephens*, I choose not to follow them.

[6] A copy of this decision is located at Doc. 15-1.

cooperative's board to determine what disputes, if any, were subject to arbitration. 256 Ga. App. at 115-16, 119. The court reasoned that since mutuality is to be applied at the time the contract is enforced, and at the time of enforcement both the cooperative and its members were mutually obligated to arbitrate certain types of disputes, the agreement was supported by consideration. *Id.* at 119. The same is true here. The TOS that Plaintiff signed in January 2019—including its arbitration provisions—remains in effect and requires both parties to arbitrate their disputes. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1376 (11th Cir. 2005) ("Georgia law provides that mutual promises and obligations are sufficient consideration to support a contract.").

Plaintiff's only other argument against enforcement of the arbitration agreement is that the parties could not lawfully agree to arbitration because the TOS qualifies as a "contract[] of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," and, thus, is explicitly excluded under § 1 of the FAA. [Doc. 9 at 1-4.] This argument is without merit. Section 1 of the FAA "warns that 'nothing' in the [FAA] 'shall apply' to 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" *New Prime, Inc. v.*

21

*Oliveira*, __ U.S. __, 139 S.Ct. 532, 537 (2019) (quoting 9 U.S.C. § 1.)[7]  The Supreme Court has held that "contracts of employment" means "agreements to perform work." *Id.* at 543-44.  Here, there is no indication that Plaintiff had an agreement to perform work for Defendant.  In her complaint, she alleges only that she was employed by Uber and that Defendant was a credit reporting agency. (Compl. ¶¶ 5-6.)  Absent any allegation or evidence that Plaintiff had a contract of employment with Defendant, she cannot avail herself of the exclusion for contracts of employment of certain transportation workers.  *See Aldridge*, slip op at 9 (rejecting ride-sharing applicant's argument that Defendant's TOS falls within exclusion for transportation workers, as the TOS was not a contract of employment).[8]

---

[7] The Court also held in *New Prime* that the issue of whether an arbitration agreement falls within the scope of § 1 is a matter for judicial determination, even where the arbitration agreement contains a delegation clause. *New Prime*, 139 U.S. at 538.

[8] Plaintiff cites two cases, *Singh v. Uber Techs. Inc.*, 939 F.3d 210 (3d Cir. 2019), and *Zamora v. Swift Transp. Corp.*, No. EP-07-CA-00400-KC, 2008 WL 2369769, at *1 (W.D. Tex. June 3, 2008), in support of her argument that the TOS is exempt from the FAA.  Those cases are distinguishable, however, because the arbitration agreements at issue in those cases arose within the context of an employment relationship, whereas here, Plaintiff did not have an employment contract with Defendant.

For these reasons, then, the Court finds that Defendant has met its burden of demonstrating that Plaintiff consented to a valid agreement to arbitrate and that "because the arbitration agreement in this case contains a provision delegating issues of arbitrability of any claim to the arbitrator, whether Plaintiff's claims fall within the scope of the arbitration agreement is also for the arbitrator to decide." *Stephens*, slip op. at 13-14.

### D.   Dismissal Versus a Stay

The FAA provides that, after finding that an issue is arbitrable, the Court shall stay the district court action until the arbitration has taken place, so long as "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. But when all claims are subject to mandatory arbitration "the weight of authority supports dismissal of the case." *See Everett v. Screening Reports, Inc.*, No. 1:17-CV-00071-ELR, 2018 WL 1283679, at *2 (N.D. Ga. Jan. 25, 2018) (citing *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004), *aff'd* 428 F.3d 1359 (11th Cir. 2005)).

Here, Defendant requests that this action be dismissed, rather than stayed, because all issues will be decided at arbitration. [Doc. 6 at 17.] Plaintiff does not

address this issue in her brief.  Since an arbitration in this case would decide all issues, I recommend that that the Court dismiss this action.

## III.   Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion to Compel be **GRANTED** and that all claims asserted in this case be compelled to arbitration, and that this case be **DISMISSED**.

IT IS SO RECOMMENDED this 19th day of December, 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge